**Derrick Ramon DUKES, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C7–00–808.

Supreme Court of Minnesota.

Feb. 1, 2001.

## OPINION

PAUL H. ANDERSON, Justice.

In 1994, Derrick Dukes was convicted of first-degree murder, first-degree attempted murder, and attempted aggravated robbery and sentenced to life in prison plus 180 months. Dukes appealed and we affirmed his conviction. Dukes subsequently filed a petition for postconviction relief alleging denial of his Sixth Amendment Confrontation Clause rights, erroneous admission of an accomplice's guilty plea, erroneous evidentiary rulings, ineffective assistance of trial and appellate counsel, improper sentencing, and discovery of falsified evidence. The postconviction court denied relief, finding that some claims were procedurally barred because they either were raised and decided or should have been raised on direct appeal and that Dukes' other claims lacked merit.

We affirm the postconviction court on all but two claims; however, we remand Dukes' ineffective assistance of trial counsel claim and his newly-discovered falsified evidence claim for further proceedings.

A detailed statement of the facts can be found in *State v. Dukes*, 544 N.W.2d 13 (Minn.1996); therefore, we will set out only the facts relevant to this appeal. On the afternoon of April 1, 1994, Derrick Dukes, Steve Morrison, and Kevin Lewis drove to Saint Paul in Dukes' car. Dukes was driving the car. In two separate incidents, Morrison and Lewis attempted to rob Bennie Chaney and Joe McKinney. During the attempted robberies, Morrison fired a gun at Chaney, who was not injured, and Morrison and Lewis each fired a gun at McKinney, who was killed by a gunshot wound to the back of his head. Dukes claims that he was unaware of the criminal intentions of Morrison and Lewis.

Eyewitnesses reported Dukes' license plate number to the police and the police tracked him to Gatsby's bar in Saint Paul, where he, Morrison, and Lewis worked as bouncers. The police arrested Dukes and impounded his car. Later that evening, the manager of Gatsby's notified the police that Dukes' jacket was still at the bar. The police then returned to Gatsby's to retrieve the jacket and in the pocket they found a .32 caliber pistol, which was later determined to be the gun used to kill McKinney. There is some evidence that Morrison and Lewis were present at Gatsby's when Dukes was arrested, but Morrison and Lewis were not arrested at that time. Dukes asserts that this sequence of events gave either Morrison or Lewis or both the opportunity to place the gun in his jacket.

Lewis confessed to his involvement in the crimes and pleaded guilty to first-degree attempted murder and second-degree intentional murder. The first-degree murder and aggravated robbery charges against Lewis were then dropped in exchange for his testimony against Dukes and Morrison. At his plea hearing, Lewis implicated both Dukes and Morrison in the murder, attempted murder, and robbery.

Dukes and Morrison were indicted on charges of murder in the first degree, attempted murder in the first degree, and attempted aggravated robbery in violation of Minn.Stat. §§ 609.185(3) (1994), 609.17 (2000), 609.245 (2000), 609.11 (1994), and 609.05 (2000). At the beginning of Dukes' trial, Lewis withdrew his guilty plea and refused to testify. A redacted version of Lewis' plea testimony was then admitted against Dukes. The jury found Dukes guilty of all charges and he was sentenced to a life term for first-degree murder plus 180 months for first-degree attempted murder, to be served consecutively. The court did not sentence Dukes for aggravated robbery because the robbery arose out of the same behavioral incident as the attempted murder. Lewis also was convicted of the same offenses, but was sentenced to life without parole for first-degree murder to be served concurrently with 230 months for attempted murder. Morrison was subsequently acquitted of all charges. At Morrison's trial, the court denied the admission of much of Lewis' plea testimony.

On his direct appeal, Dukes challenged four of the district court's rulings: the admission of Lewis' withdrawn guilty plea testimony; the refusal to instruct the jury on the lesser-included offense of second-degree murder; the refusal to sever the offenses into two trials; and the imposition of consecutive, rather than concurrent, sentences. *Dukes*, 544 N.W.2d at 15. We affirmed Dukes' convictions in a unanimous opinion. *Id.*

Dukes subsequently filed a petition for postconviction relief. In his petition, Dukes raised six arguments: (1) denial of Sixth Amendment Confrontation Clause rights by the admission of Lewis' plea testimony; (2) denial of his right to a fair trial by the admission of Lewis' guilty plea; (3) denial of equal protection when the

same court made inconsistent evidentiary determinations on the admissibility of Lewis' testimony in Dukes' and Morrison's trials; (4) denial of effective assistance of trial and appellate counsel; (5) denial of equal protection and due process because the district court sentenced Lewis and Dukes differently for the same crimes; and (6) that he was entitled to a new trial due to the recent discovery of falsified trial evidence.

The postconviction court held an evidentiary hearing at which Dukes and an expert testified about Dukes' ineffective assistance of counsel claims. Dukes testified that he did not give his consent to his counsel to admit guilt to any of the charged offenses, but neither Dukes nor the state elicited the testimony of Dukes' trial counsel. After the evidentiary hearing, the postconviction court denied Dukes' petition and he appealed. On appeal, Dukes raises essentially the same arguments, together with a claim that the postconviction court abdicated its duties by adopting verbatim the state's proposed findings and order.

### I.

■ We review a postconviction court's findings to determine whether there is sufficient evidentiary support in the record. *Russell v. State*, 562 N.W.2d 670, 672 (Minn.1997). We afford great deference to a district court's findings of fact and will not reverse the findings unless they are clearly erroneous. *State v. Bradford*, 618 N.W.2d 782, 794 (Minn. 2000). The decisions of a postconviction court will not be disturbed unless the court abused its discretion. *Perry v. State*, 595 N.W.2d 197, 200 (Minn.1999). Each of Dukes' claims of error in the postconviction court's findings must be reviewed under this standard.

■ Dukes argues that the admission of Lewis' plea testimony violated his Sixth Amendment right of confrontation and that the admission of Lewis' guilty plea as the statement of an accomplice required a limiting instruction. The postconviction court held that these two claims were raised on direct appeal, so Dukes was not entitled to a second review. Once a party takes a direct appeal, any claim raised in that appeal will not be considered in a petition for postconviction relief. *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737, 741 (1976). Not only are claims previously raised barred from consideration, but consideration of claims known, but not raised, at the time of the direct appeal is also barred. *See id.* The exceptions to this rule are (1) a claim that is so novel that the legal basis was not available on direct appeal or (2) a claim that the petitioner did not "deliberately and inexcusably" fail to raise on direct appeal when fairness requires its consideration. *Roby v. State*, 531 N.W.2d 482, 484 (Minn.1995). In Dukes' direct appeal, he raised the issue of whether the court improperly admitted Lewis' plea testimony. We affirmed the use of Lewis' plea testimony. *State v. Dukes*, 544 N.W.2d 13, 19 (Minn.1996) (distinguished by *State v. Profit*, 591 N.W.2d 451 (Minn.1999), *cert. denied*, 528 U.S. 862, 120 S.Ct. 153, 145 L.Ed.2d 130 (1999)). We specifically stated that the Lewis plea testimony "contained sufficient indicia of reliability to avoid violating the Confrontation Clause." *Id.* Therefore, we conclude the postconviction court did not abuse its discretion in finding that this claim was procedurally barred.

■ The claim of the admission of Lewis' plea as the statement of an accomplice is slightly different. Dukes relies on *State v. Cermak* for the proposition that evidence of a guilty plea of an accomplice may not be used as substantive evidence against the defendant and that, at a minimum, a limiting instruction should have been given to the jury. 365 N.W.2d 243, 247 (Minn.1985). We did not consider on direct appeal the use of Lewis' plea as the statement of an accomplice because Dukes did not raise this claim at that time. However, the legal basis for this claim was available at the time of Dukes' direct ap-

peal and he has not provided any theory as to why fairness now dictates its consideration. Therefore, Dukes waived consideration of the use of Lewis' plea as the statement of an accomplice. *Knaffla*, 243 N.W.2d at 741.

■ Likewise, if Dukes wanted to challenge the lack of a jury instruction, he should have raised this claim on direct appeal. *Roby*, 531 N.W.2d at 484. Here, Dukes has provided no reason why we should take exception to the general rule barring postconviction review. The record reflects that Dukes knew at the time of his direct appeal that Lewis' plea was introduced against him and that no jury instruction was given. We conclude Dukes has waived consideration of the lack of a jury instruction because this claim was known, but not raised, on his direct appeal. Accordingly, we hold that the postconviction court did not abuse its discretion when it found these claims procedurally barred.

## II.

Dukes next asserts that his Sixth Amendment rights were violated because his trial and appellate counsel were ineffective. The Sixth Amendment guarantees the right to assistance of counsel in order to ensure that a criminal defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Sixth Amendment has been interpreted to guarantee the criminal defendant "effective" assistance of counsel. *Id.* at 686, 104 S.Ct. 2052 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 4, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

■ In order for an ineffective assistance claim to warrant a reversal of a conviction, the defendant must meet a two-pronged test evaluating deficiency and prejudice. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *State v. Doppler*, 590 N.W.2d 627, 633 (Minn.1999). First, the defendant must show by a preponderance of the evidence that his counsel's performance was

so deficient that it fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. We have further explained this standard, concluding that "[i]n Minnesota, an attorney acts within the objective standard of reasonableness when he provides his client with 'the representation of an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under the circumstances.'" *Doppler*, 590 N.W.2d at 633. There is a strong presumption that an attorney acted competently. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Under the second prong, the defendant must show by a preponderance of the evidence that his counsel's error "so prejudiced the defendant at trial that a different outcome would have resulted but for the error." *Doppler*, 590 N.W.2d at 633 (explaining *Strickland*, 466 U.S. at 687, 691, 104 S.Ct. 2052).

Dukes has raised four ineffective assistance of counsel claims, each of which will be dealt with separately.

### Admission of Guilt

■ Dukes first argues that he received ineffective assistance of trial counsel because counsel admitted Dukes' guilt without his permission. Dukes argues that in closing arguments counsel admitted Dukes' guilt to the aggravated robbery charge. In support of his argument, Dukes cites to the following remarks by counsel about Count 1, the aggravated robbery charge.

Now we get to the weakest evidence in the case. It's Dukes' car, with two guys who pull up to a guy, and one of the men in the car say, "Give me your money", or try to rob him, Bennie Chaney. Clearly it would seem to be Mr. Dukes is aiding and abetting an attempted aggravated robbery of Bennie Chaney. Can you make the leap to him aiding and abetting an attempted intentional killing of Bennie Chaney during an attempted aggravated robbery? This gets complicated. Well, you may say

there was an attempted aggravated robbery. And you may say there was an aiding and abetting. But what evidence do you have that Steve Morrison intended to kill him? * * * Count 1, both Lewis' plea and Lewis' explanation to McConnon put Derrick Dukes right into it right up to his hips. You know it. I know it. He's in deep trouble on Count 1.

Dukes' counsel went on to point out the evidence that would counter Dukes' guilt on Count 1, but he qualified his explanation by stating that the evidence was "[p]erhaps not as persuasive, and I wouldn't want to insult your intelligence on that issue, but there should be extreme doubt in your mind regarding the intent to kill of Chaney, and the intent to kill McKinney, perhaps not so much as Count 1." It appears that Dukes' counsel was arguing to the jury that even if they found Dukes guilty of aggravated robbery, they should not find him guilty of murder and attempted murder. However, when making this argument, counsel made a number of statements that could be interpreted as conceding Dukes' guilt to the aggravated robbery charge.

The aggravated robbery charge and the attempted murder charge are based on the incident involving Chaney, while the murder charge is based on the incident involving McKinney. Both the murder and attempted murder charges are felony-murder charges under Minn.Stat. § 609.185(3). This section provides, "[w]hoever does any of the following is guilty of murder in the first degree * * * (3) causes the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit burglary, aggravated robbery * * *." Minn.Stat. § 609.185(3). Therefore, a concession of guilt to aggravated robbery essentially concedes most of the elements necessary to convict Dukes of the murder and attempted murder charges. Dukes was indicted under the aiding and abetting statute, § 609.05, which makes an individual liable for the crimes committed by those he intentionally assists. "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn.Stat. § 609.05, subd. 1. To obtain a conviction under this statute, the state did not need to prove that Dukes committed any of the underlying crimes. Instead, the state needed to prove that *someone* committed the underlying crimes and Dukes intentionally assisted the person committing the crime.

Finally, Dukes was charged under the attempt statute for the attack on Chaney. Minn.Stat. § 609.17. This charge requires only that the state prove that a "substantial step" toward the completed crime of first-degree murder was taken for Dukes to be found guilty. Minn.Stat. § 609.17. Therefore, if Dukes conceded guilt to the aggravated robbery charge, the only additional element the state needed to prove for the attempted murder was that one of Dukes' accomplices took a substantial step toward intentionally killing Chaney—that Morrison acted intentionally when he fired at Chaney.

With respect to the charge of murdering McKinney, a concession of guilt to aggravated robbery undermines Dukes' defense that although he was present, he was unaware of the intentions of Morrison and Lewis. Once Dukes conceded that he participated in the aggravated robbery, he would no longer be able to claim that he unknowingly assisted Morrison and Lewis by driving them to Saint Paul. Arguably the state would not have to prove any further involvement by Dukes, but only would have to show that either Morrison or Lewis intentionally shot at McKinney during the commission of the robbery, which element was proven by Lewis' admission in his plea testimony. Therefore, if Dukes' counsel conceded guilt to the aggravated robbery charge, this concession arguably relieved the state of proving any of the other elements of the attempted

murder and murder charges that were specific to Dukes' conduct.

When asserting an ineffective assistance of counsel claim, a defendant must generally prove prejudice under *Strickland,* but there are some Sixth Amendment right to counsel violations in which prejudice to the defendant will be presumed. *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. One such instance is when counsel admits a defendant's guilt without the consent of the defendant. *State v. Wiplinger,* 343 N.W.2d 858, 861 (Minn. 1984). The decision to admit guilt is the defendant's decision to make. *State v. Pilcher,* 472 N.W.2d 327, 337 (Minn.1991). In situations when counsel admits guilt without the consent of the defendant, the defendant is entitled to a new trial, regardless of whether he would have been convicted without the admission. *Wiplinger,* 343 N.W.2d at 861. In *State v. Moore,* the defendant's counsel argued that the defendant should be found guilty of a lesser-included offense. 458 N.W.2d 90, 95–96 (Minn.1990). We concluded that although this concession was a valid trial strategy, it could not be done without the defendant's consent. *Id.* at 96. In *Wiplinger,* we stated that it was improper for counsel to impliedly admit guilt through his cross-examination questions. 343 N.W.2d at 861. We then concluded that defense counsel was attempting to indirectly concede guilt so that his client could receive leniency in sentencing. *Id.*

Even if counsel admits guilt without the defendant's permission, no error will be found if the defendant acquiesced in the strategy. *State v. Provost,* 490 N.W.2d 93, 97 (Minn.1992). In *Provost,* we concluded that the defendant acquiesced in the admission because his counsel used the same strategy throughout trial and the defendant never objected. *Id.* In *Pilcher,* we concluded that the defendant acquiesced in the admission because counsel used the same strategy from beginning to end of trial, the defendant admitted that he understood the tactic, but

he did not object. 472 N.W.2d at 337. At the other end of the spectrum, the defendants in both *Moore* and *Wiplinger* objected to the admission made by counsel before their cases were given to the juries. *Moore,* 458 N.W.2d at 96; *Wiplinger,* 343 N.W.2d at 861.

Here, unlike in *Pilcher* and *Provost,* Dukes' counsel did not use the same strategy throughout trial. In his opening statement, counsel stated that Dukes was an unknowing participant who was present only because he had agreed to drive Lewis and Morrison to someone's house in Saint Paul. Midtrial, counsel confirmed to the court that the defense strategy was to argue that Dukes was present, but not aware of Lewis' and Morrison's intentions to commit the crimes. More specifically, when discussing the admissibility of *Spriegl* evidence, the court inquired, "my understanding of the defense's case at this point is that Mr. Dukes was there, he was in the car when both incidents happened, that he was not aware of what Mr. Morrison and Mr. Lewis were going to do. He did not participate. He could not have known what their intentions were. If things change * * *." Counsel for Dukes then responded, stating "It is not going to change, Your Honor." But in his closing argument, counsel argued to the jury only that they should not find that the murder and attempted murders were intentional. With respect to the aggravated robbery charge, counsel made statements that Dukes asserts were a concession of guilt. We note that Dukes did not object prior to the jury receiving the case as the defendant did in *Wiplinger,* but, unlike the defendants in *Pilcher* or *Provost,* Dukes did not listen to admissions of guilt throughout trial without objection.

The postconviction court did not address the merits of Dukes' ineffective assistance of counsel claim, holding that Dukes had waived the claim because it was not raised in his direct appeal. As noted earlier, the general rule is that

claims raised or known at the time of direct appeal will not be considered on a petition for postconviction relief. *Knaffla,* 243 N.W.2d at 741. However, we have recognized that claims that require a court to explore conversations between attorney and client are best handled on a petition for postconviction relief. *Robinson v. State,* 567 N.W.2d 491, 495 (Minn.1997). In *Robinson,* we explained, "[i]n order to evaluate such a claim, a court needs to hear testimony from the defendant, his or her trial attorney, and any other witnesses who have knowledge of conversations between the client and the attorney." *Id.* We juxtaposed claims requiring evidence of attorney-client communications with other ineffective assistance of counsel claims that could "be evaluated by an appellate court on direct appeal based on the briefs and trial court transcript and without any additional factfinding." *Id.* We held that ineffective assistance of counsel claims that require additional factfinding are properly raised in a postconviction petition, even if they were known at the time of the defendant's direct appeal. *Id.*

The claim of whether Dukes consented to his counsel's admission of Dukes' guilt to aggravated robbery is exactly the type of claim that needs additional factfinding before it can be resolved. Here, the postconviction court did not weigh the merits of Dukes' claim, but instead concluded that the claim was procedurally barred. We conclude that the postconviction court needs to consider testimony from Dukes and his counsel in addition to reviewing the trial record before it can decide the merits of this claim. Therefore, we remand to the postconviction court for further proceedings regarding Dukes' claim that he was denied effective assistance of counsel because his counsel conceded his guilt to aggravated robbery.

*Lewis' plea testimony*

■ Dukes also argues that his trial counsel was ineffective because counsel requested admission of the entire Lewis plea transcript. Dukes asserts that the admission of the most incriminating statements was the result of a request by his counsel. Dukes misstates the record. Dukes' attorney objected to the admission of statements implicating Dukes. Once it became clear that the incriminating statements would be admitted, then, and only then, did Dukes' counsel request admission of Lewis' complete plea testimony so that the statements could be heard in context. Even if Dukes' argument had merit, this claim was known, but not raised, on direct appeal. *Robinson,* 567 N.W.2d at 495. Unlike the admission of guilt claim, this claim could have been decided based on the record without an evidentiary hearing. There is no need for the court to inquire into the conversations between attorney and client to determine whether Dukes' attorney was ineffective in his handling of the Lewis plea testimony. We conclude that the postconviction court correctly found that Dukes was procedurally barred from raising the claim that his trial counsel was ineffective in his advocacy relating to the admission of the Lewis plea testimony.

*Use of Williamson v. United States*

■ Dukes' third ineffective assistance of counsel claim relates to his appellate counsel. Dukes asserts that his appellate counsel did not discuss *Williamson v. United States* in her brief to us on direct appeal. 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). *Williamson* is a leading Supreme Court case discussing the admissibility of statements under the "statement against interest" exception to the hearsay rule. *Id.* at 596, 114 S.Ct. 2431. At Dukes' trial, the court considered *Williamson* and both defense counsel and the state argued at length about its meaning when the court was determining the admissibility of Lewis' plea testimony. Despite *Williamson*'s importance, appellate counsel failed to mention *Williamson* in her brief, let alone discuss how it should apply to Lewis' plea testimony.

The Supreme Court has indicated that courts may proceed directly to the second

prong of the ineffective assistance analysis and first analyze whether the defendant was prejudiced. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. Thus, in instances where there is no actual prejudice, courts can avoid evaluating the performance of counsel. *Id.* The Supreme Court also has encouraged courts to "strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Id.* Therefore, we will first consider whether Dukes was prejudiced by any potential error by counsel. To prove prejudice, Dukes must be able to show that absent his appellate counsel's error, the outcome of his direct appeal would have been different. *See id.* Even though Dukes' counsel did not discuss or cite to *Williamson,* the state did raise *Williamson* and we addressed the case when deciding the direct appeal. Further, we fully analyzed *Williamson* and concluded that the admission of Lewis' plea testimony conformed to the Supreme Court's requirements in *Williamson. Dukes,* 544 N.W.2d at 18–19. Dukes cannot show that he was prejudiced by counsel's omission. Therefore, we conclude that the postconviction court did not abuse its discretion in denying relief on this claim.

*Failure to advise of ineffective assistance of trial counsel claims*

Dukes' final ineffective assistance of counsel claim is that his appellate counsel failed to advise him of any potential ineffective assistance of trial counsel claims and that such claims needed to be raised in his direct appeal. The postconviction court concluded that Dukes did not prove appellate counsel's performance fell below an objective standard of reasonableness and that Dukes did not prove prejudice. The court did not make any factual findings on these claims.

■■■■ As with the previous claims, Dukes must show that he was prejudiced by any potential error made by his appellate counsel. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. Dukes maintains that if

we conclude his ineffective assistance of trial counsel claims are waived because they were not raised on direct appeal, then he was prejudiced by the failure of his appellate counsel to advise him of the proper procedure to raise the claims. The first ineffective assistance of trial counsel claim that the postconviction court found Dukes had waived is that his counsel was deficient because he admitted Dukes' guilt without Dukes' consent. Because we have decided to remand this claim, Dukes cannot show he was prejudiced by his appellate counsel's failure to advise him on this claim. On remand, he will have the claim heard on the merits.

■■■■ The second ineffective assistance of trial counsel claim that Dukes may have waived is that trial counsel did not prevent the admission of the incriminating parts of Lewis' plea testimony. We have concluded that Dukes' claim relating to his trial counsel's handling of the Lewis plea testimony is barred because the claim was known, but not raised, on direct appeal. *Knaffla,* 243 N.W.2d at 741. However, the fact that the claim is now barred is not enough to show prejudice. Dukes also must show that absent his appellate counsel's failure to advise him of the proper procedure for raising the claim, there was a reasonable probability that the outcome of his direct appeal would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Dukes cannot make such a showing.

We concluded on direct appeal that the plea testimony admitted against Dukes was proper under both the exception to the hearsay rule and the Confrontation Clause. *Dukes,* 544 N.W.2d at 19. It is highly unlikely that we would have reached that conclusion on direct appeal and in the same opinion concluded that his trial counsel's representation fell below the "objective standard of reasonableness" in his attempts to limit the admission of the same statements. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. It is incongruous to

conclude that counsel's advocacy was unreasonably deficient because he failed to prevent the admission of evidence that we concluded was properly admitted. Therefore, regardless of whether his appellate counsel's representation fell below an objective standard of reasonableness on this claim, Dukes cannot show that he was prejudiced by her failure to advise him of this claim. Accordingly, we conclude that the postconviction court did not abuse its discretion in denying relief on this ineffective assistance of appellate counsel claim.

### III.

Dukes' next argument is that the postconviction court abused its discretion when it failed to consider the merits of his equal protection and due process claim that his sentence is improper relative to the sentence imposed on Lewis. Dukes claims that disparate levels of culpability—blameworthiness—cannot explain the difference between the two sentences and therefore the sentence imposed on him violates his right to equal protection and due process. Dukes' argument is essentially an equal protection argument.

Dukes was sentenced to consecutive terms for first-degree murder and first-degree attempted murder. However, after being found guilty on the same charges, Lewis was sentenced to concurrent terms for the same two convictions. *State v. Lewis*, 547 N.W.2d 360, 361 (Minn.1996). Dukes asserts that he is less blameworthy because the evidence presented at both trials established that Lewis was the one who actually shot McKinney, while Dukes drove the car used to commit the crime.

In Dukes' direct appeal, we concluded that the district court did not abuse its discretion in imposing consecutive sentences on Dukes because his participation in the crime was not so passive that the imposition of consecutive sentences exaggerated his culpability. *Dukes*, 544 N.W.2d at 20. Because the issue was not raised, we did not consider whether the imposition of different sentences on fellow defendants by the same judge violated Dukes' right to equal protection. *Id.* However, Lewis was sentenced prior to Dukes' direct appeal. Claims known but not raised on direct appeal will not be considered on a subsequent petition for postconviction relief. *Knaffla*, 243 N.W.2d at 741. Accordingly, we hold that the postconviction court's conclusion that Dukes was procedurally barred from raising this claim is not clearly erroneous.

### IV.

Dukes' next claim relates to newly-discovered falsified testimony by Lewis. As an attachment to his postconviction petition, Dukes submitted an affidavit by Kevin Lewis, n/k/a Hannabal Shaddai, in which Lewis stated that he lied in his plea testimony because he was trying to obtain the benefit of the plea. The postconviction court denied Dukes relief on this claim, concluding that the new evidence was "cumulative, impeaching, doubtful, and would probably not produce an acquittal * * *." The language used by the court suggests that the court was following the test for determining when to grant a new trial based on newly-discovered evidence. *Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997). This test requires that a defendant must prove four elements before he will be entitled to a new trial: (1) that the evidence was not known to the defendant or his counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result. *Id.*

Although the four-prong *Rainer* test is the correct test for newly-discovered evidence, it is not the correct test when a court reviews an allegation that false testimony was given at trial. *See Sutherlin v. State*, 574 N.W.2d 428, 433 (Minn.1998). When it is alleged that false testimony was given at trial, the court must evaluate the claim under the three-

prong test articulated by the 7th Circuit in *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928). *Sutherlin*, 574 N.W.2d. at 433. We have previously examined the differences between these two tests. In *State v. Caldwell*, we concluded that analysis of newly-discovered evidence in cases involving witness recantation should not be an analysis of the impact of the recantation, but should be an analysis of the effect that the absence of the false testimony would have had on the result in the original trial. 322 N.W.2d 574, 585 (Minn.1982). The test for newly-discovered falsified testimony provides that in order to grant a new trial: (1) the court must be 'reasonably well satisfied' that the [trial] testimony was false; (2) without the false testimony, the jury might have reached a different conclusion; and (3) the petitioner was taken by surprise at trial or did not know of the falsity until after trial. *Sutherlin*, 574 N.W.2d at 433 (citing *Caldwell*, 322 N.W.2d at 584–85).

The postconviction court did not conduct an analysis or make any findings on any of the *Larrison* criteria, although there is evidence in the record that would support either the grant or the denial of relief. Lewis' affidavit directly contradicts his plea testimony, which was substantially referenced by both the state and Dukes. However, there is other evidence in the record in support of Dukes' participation. Although Dukes was not surprised in the sense that he did not know what Lewis had stated in his plea testimony, he was surprised that the plea testimony would be used in place of live testimony by Lewis, because Lewis withdrew his plea and refused to testify after Dukes' trial had already begun. These factual disputes are the type that a postconviction court must resolve when evaluating a claim of newly-discovered falsified trail testimony. We conclude that there are factual disputes on this claim and that the postconviction court did not apply the correct test in evaluating the recanted testimony. Therefore, we remand this claim for an application of the three-prong *Larrison* test and for findings as to whether a new trial is warranted by the newly-discovered falsified testimony.

## V.

The final question we address is Dukes' argument that the postconviction court abdicated its duties as a "neutral arbitrator" when it "promptly" and verbatim adopted the proposed findings submitted by the state. He argues that this action by the postconviction court prejudiced him because none of the evidence he presented at the hearing, particularly the testimony of his expert witness, is reflected in the court's findings. Dukes asserts that he was denied procedural due process because the court "relinquished [its] duty to conduct an independent review * * *."

Dukes relies on *Anderson v. City of Bessemer City* for the proposition that appellate courts should be "extremely leery and circumspect" of findings prepared by one party and accepted without change by the court. 470 U.S. 564, 572, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In *Anderson*, the United States Supreme Court criticized the practice of courts adopting verbatim the findings prepared by the prevailing party, particularly if the findings "have taken the form of conclusory statements unsupported by citation to the record." *Id.* As the Eighth Circuit explained in *Bradley v. Maryland Casualty Co.*, the problem with verbatim adoption of one party's findings is that it can make it more difficult to determine whether a court exercised its "own careful consideration of the evidence, of the witnesses, and of the entire case." 382 F.2d 415, 423 (8th Circuit 1967). We agree that it is preferable for a court to independently develop its own findings. Therefore, when we review a court's verbatim adoption of one party's proposed findings, we will heed how the findings were prepared when we conduct a careful and searching review of the record. We will devote special care "not in the test that we apply to a particular finding of

fact—individual findings will only be reversed if clearly erroneous—but in the volume of evidence we sift in judging the correctness of such findings * * *." *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1408 (D.C.Cir. 1988) (emphasis removed). However, if after such a review we conclude that the findings are not clearly erroneous, the verbatim adoption, standing alone, will not be insufficient grounds for reversal.

Here, as a result of the postconviction court having adopted verbatim the state's proposed findings, we have devoted special care in our review of the record. After such review, we conclude that with the exception of the findings on the two remanded claims, the findings are not clearly erroneous; therefore, we hold that the postconviction court's verbatim adoption of the state's proposed findings, standing alone, does not constitute grounds for reversal.

Affirmed in part and remanded in part.