Moises Vidal **ROBLEDO–KINNEY,**
**Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C0–01–1096.

Supreme Court of Minnesota.

Jan. 10, 2002.

Melissa Sheridan, Asst. State Public Defender, St. Paul, for appellant.

Mike Hatch, MN Atty. Gen., Susan Gaertner, Ramsey County Atty., Mark Nathan Lystig, Asst. Ramsey County Atty., St. Paul, for respondent.

## OPINION

GILBERT, Justice.

This is an appeal from an order of the Ramsey County District Court denying petitioner Moises Vidal Robledo–Kinney's petition for postconviction relief. Robledo–Kinney (Kinney) was convicted of one count of first-degree murder, two counts of second-degree murder, and one count of kidnapping for the kidnapping and murder of Joshua James Christenson. Kinney appealed and we affirmed. *State v. Robledo–Kinney,* 615 N.W.2d 25 (Minn.2000).

In his postconviction petition, Kinney argues that he was denied effective assistance of trial counsel based on his attorney advising him not to testify at trial. Specifically, Kinney argues that his attorney advised him that the state would be allowed to impeach Kinney with the statement he made to police during plea negotiations if he testified inconsistently with this statement, and that this advice led Kinney to waive his right to testify. The postconviction court denied Kinney's petition. We affirm.

The facts set forth below are those relevant to this appeal; a more detailed statement of the facts relating to Kinney's convictions can be found in *Robledo–Kinney,* 615 N.W.2d 25. On January 30, 1998, Kinney attended a birthday party in St. Paul at a house where Michael Cleveland lived with his mother. Alex Tovar, Joshua Christenson, and others were also at the party. At some point during the party, Kinney and Christenson got into a fight in

Cleveland's backyard that escalated to a point where Kinney and others wrapped masking tape around Christenson's head, covering his eyes, nose, and mouth. Christenson was then brought into the house where Kinney and others resumed the beating by hitting, kicking, stomping, and jumping on Christenson. Christenson was also sodomized with a mop handle. Eventually, Christenson was carried outside, placed in the back seat of his car, and stabbed by Tovar with a barbecue fork and large kitchen knife. Kinney then took the knife, stabbed Christenson, and said to Tovar, "I want to let you know that I am with you, with you, with you on this." Kinney and two other people at the party then took Christenson's car to the corner of Kent and Jessamine Streets in St. Paul, where it was found the next day with Christenson's dead body in the back seat.

Kinney was arrested for Christenson's murder in May 1998 and plea negotiations began shortly thereafter. During the course of these negotiations, Kinney's attorney assured the state's attorney that Kinney had not stabbed Christenson. On June 1, 1998 a plea agreement was reached, contingent on Kinney not having been involved in either stabbing or sexually assaulting Christenson. Shortly thereafter on that same day, Kinney informed his attorney that he had in fact both stabbed and sexually assaulted Christenson and then gave a statement to the police indicating that he had been involved in both of these acts. Based on this information, the state withdrew its offer of the plea agreement.

Kinney moved the district court to specifically enforce the plea agreement claiming detrimental reliance. The court, by order dated November 12, 1998, denied

Kinney's motion based on the mutual mistake of the state's attorney and Kinney's attorney as to the extent of Kinney's involvement in the crime at the time the plea bargain was negotiated. In Conclusion 3 of this order the court stated:

> There has been no detriment to [Kinney] as a result of his reliance on the plea agreement. At best, the information obtained during the interview may be used to impeach [Kinney] should he testify at trial inconsistently with his June 1, 1998 statement. [Kinney] does not have the right to offer perjured testimony. Thus, there is no detriment in him being prohibited from doing so.

The parties and the court again discussed Kinney's June 1, 1998 statement during jury selection on February 10, 1999.[1] Part of this discussion took place off the record. On the record, Kinney's attorney stated:

> I would like to make a record that, should Mr. Kinney choose to testify, the Court indicated that, if that testimony was in any way different from his statement, that he would be impeached with his statement, would open the door.

In response, the court stated:

> [I]f Mr. Kinney were to testify to that fact [his statement], I indicated that I thought that opened the door to the statement coming in. It—and I'm trying to be careful about this, *because what was occurring in my mind was a little different than what you just stated,* * * * is that on that particular issue, I think that if Mr. Kinney raises the issue that "I gave a statement," * * * it looks like he's cooperating, and that we're hiding the ball from the jury and not letting them know what he said. * * * If the

---

1. This discussion arose in the context of Kinney's attorney's effort to get the state to enter into a stipulation informing the jury that Kinney had given a statement to police, but that the statement's contents were inadmissible.

defense seeks to use the statement, * * * the substance of the statement then becomes admissible because the defense puts the statement at issue. * * * I think that if you open the door, then the whole statement is fair game. It—in essence, I think it falls under the rule of completeness. You wouldn't be able to use a portion of the statement without the State, in effect, being able to put in the total statement so that the context would be understood.

(Emphasis added.) Kinney's attorney then indicated on the record that this was a sufficient explanation of the court's ruling.

At trial, the defense theory was that although Kinney took part in beating Christenson, he was not involved in the acts that caused his death. However, Kinney did not testify to offer support for this theory. On February 19, 1999, immediately before closing arguments, Kinney's attorney questioned Kinney on the record as to his choice not to testify.

Attorney: Mr. Kinney, we've discussed on a number of occasions your option of testifying or not testifying and the ramifications of your testifying; is that right?

Kinney: Yes, sir.

Attorney: And, given all of the facts of this case and the rulings of the Court, is it your choice to testify or to not testify?

Kinney: If I testify my statement is going to be brought up. Right?

Attorney: Right.

Kinney: Then I won't testify.

Attorney: You understand that you still have a right to do so if you want to?

Kinney: Yes, I do.

Attorney: Okay.

The Court: All right. Mr. Kinney, have you had enough time to talk that over with [your attorney]?

Kinney: Yes, I have, Your Honor.

The Court: And do you need any additional time to discuss that with him before making that decision?

Kinney: No, Your Honor.

The Court: Do you have any questions for me about that?

Kinney: No.

Kinney was subsequently found guilty and convicted on all counts.

On direct appeal, Kinney argued that the district court deprived him of his constitutional right to testify by erroneously ruling that the state could impeach his testimony with the statement he gave to police during plea negotiations. In our decision, we noted that it would have been error for the district court to allow the state to impeach Kinney with this statement but recognized that this was not what in fact happened. *Robledo–Kinney,* 615 N.W.2d at 30. Instead, the district court never made a final determination as to how, or even if, Kinney's statement could be used at trial. *Id.* at 31. We went on to state that "[t]o the extent that Kinney was confused by Conclusion 3 from the November 12, 1998 Order, any such confusion should have been eliminated on February 10, 1999, when use of the June 1, 1998 statement was revisited." *Id.* At that time, the district court made it clear that Kinney's statement was to be treated as if it did not exist at all and that it would be inappropriate for the statement to be used in any fashion. *Id.* Therefore, "Kinney should have understood that the district court was not going to allow the June 1, 1998 statement to be used for impeachment or any other purpose unless Kinney himself sought to use it to mislead the jury." *Id.* We then held that, under the rule of completeness, "the district court

did not err when it held that if Kinney brought up the June 1, 1998 statement, it would allow the state to put the entire statement into evidence." *Id.* We went on to affirm all of Kinney's convictions.

After Kinney's direct appeal, Kinney's attorney signed an affidavit stating that he advised Kinney that the district court had ruled that the state would be allowed to impeach Kinney with his June 1, 1998 statement if he testified inconsistently with this statement. Kinney also signed an affidavit stating that he wanted to testify as to his version of what happened to Christenson but instead followed his attorney's advice not to testify. Kinney submitted these affidavits to the district court with his petition for postconviction relief, requesting reversal of his convictions and a new trial based on ineffective assistance of trial counsel. The court denied Kinney's request, concluding: (1) Kinney waived the issue by not raising it on his direct appeal; (2) Kinney's claim that he was denied the right to testify because he believed his statement could be used to impeach him had already been decided on his direct appeal; and (3) Kinney's claim failed to establish either that his counsel's performance fell below an objective standard of that of a reasonably competent attorney or that the result of the trial would have been different but for his attorney's alleged errors. This appeal followed.

 We review a postconviction proceeding to determine only whether sufficient evidence exists to support the postconviction court's findings. *Russell v. State,* 562 N.W.2d 670, 672 (Minn.1997) (citations omitted). We will not reverse the postconviction court's decision unless we find that the court abused its discretion. *Id.*

 Once a petitioner has directly appealed a conviction, a postconviction court will generally not consider any claim raised in the direct appeal, or any claim known at the time of the direct appeal, but not raised. *Dukes v. State,* 621 N.W.2d 246, 251 (Minn.2001); *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). Therefore, postconviction claims of ineffective assistance of trial counsel are generally precluded if known at the time of direct appeal. *Black v. State,* 560 N.W.2d 83, 85 (Minn.1997). An exception exists when the claim is such that the reviewing court needs additional facts to explain the attorney's decisions.[2] *Id.* at 85 n. 1. Accordingly, a claim that requires a court to explore conversations between attorney and client in order to evaluate the claim may be dealt with on a petition for postconviction relief. *Dukes,* 621 N.W.2d at 255 (citing *Robinson,* 567 N.W.2d at 495).

In *Robinson,* we concluded that in order to evaluate the defendant's allegation that his trial counsel failed to communicate two plea offers, "a court needs to hear testimony from the defendant, his or her trial attorney, and any other witnesses who have knowledge of conversations between the client and the attorney." 567 N.W.2d at 495. Therefore, we held that because additional factfinding was required, the defendant's claim of ineffective assistance of counsel based on this allegation was properly raised in a petition for postconviction relief. *Id.* We recognized that this claim differed from the defendant's other inef-

**2.** In such a case, the best procedure is to raise the ineffective assistance of counsel claim in a petition for postconviction relief *before* appeal. *Id.* at 85 n. 1. Nevertheless, we have recognized that ineffective assistance of counsel claims requiring additional factfinding may be properly raised in a postconviction petition after the direct appeal, even if they were known at the time of the defendant's direct appeal. *Dukes,* 621 N.W.2d at 255; *Robinson v. State,* 567 N.W.2d 491, 495 (Minn.1997).

fective assistance of counsel claims in that the other claims could be evaluated on direct appeal based solely on the briefs and the trial court transcript, and without any additional factfinding. *Id.* Accordingly, we held that the defendant's other claims of ineffective assistance of counsel were properly dismissed by the postconviction court because they were known at the time of his direct appeal. *Id.*

Here, Kinney argued in his direct appeal that he was denied the right to testify because the district court ruled that the state could impeach Kinney with his June 1, 1998 statement if he testified. As discussed above, we held in Kinney's direct appeal that the district court never made such a ruling and that "Kinney should have understood that the district court was not going to allow the June 1, 1998 statement to be used for impeachment or any other purpose unless Kinney himself sought to use it to mislead the jury." *Robledo–Kinney*, 615 N.W.2d at 31. Kinney argues that he neither knew nor had any way of knowing that ineffective assistance of counsel might be an issue until our "finding" in his direct appeal that the district court had not ruled that his June 1, 1998 statement would be admissible for impeachment. However, the postconviction court concluded that "[t]he legal and factual basis for the claim of ineffective assistance of counsel was known at the time of the direct appeal and was not raised then" and held that Kinney waived the issue by not raising it in his direct appeal. We must decide if this was an abuse of discretion.

Kinney's attorney questioned Kinney on the record about his choice not to testify. During this exchange Kinney asked, "If I testify my statement is going to be brought up. Right?" His attorney responded by stating "Right." This exchange at the end of the trial between Kinney and his attorney is explicitly referenced in Kinney's affidavit to support his claim that his attorney provided ineffective assistance. Even if we were to accept Kinney's new argument and assume that it was his attorney, rather than the district court, who led him to waive his right to testify, Kinney's own support for this alternative argument comes from the record. Therefore, Kinney knew why he waived his right to testify at the time of his direct appeal. Accordingly, we hold that the postconviction court did not abuse its discretion by concluding that the legal and factual basis for Kinney's ineffective assistance of counsel claim related to his decision not to testify was known at the time of Kinney's direct appeal.

This does not end our inquiry; we must still consider whether Kinney's ineffective assistance of counsel claim requires additional factfinding. *See Black*, 560 N.W.2d at 85 n. 1. The requested postconviction relief in both *Robinson* and *Dukes* involved claims that were such that the reviewing court needed facts in addition to those present in the trial court transcript and briefs submitted on direct appeal in order to determine the scope of the attorney-client conversations. *See Robinson*, 567 N.W.2d at 495; *Dukes*, 621 N.W.2d at 255. Unlike the claims in *Robinson* and *Dukes*, Kinney's ineffective assistance of counsel claim does not require evaluating additional facts. While Kinney's affidavit indicates that his attorney advised him not to testify because Kinney's statement could be used to impeach him at some time other than when he did so on the record, this alleged advice does not differ from the advice his attorney gave Kinney on the record. Any legal and factual basis to support Kinney's claim of ineffective assistance of counsel was in the trial transcript. Therefore, no additional factfinding is required. Accordingly, we hold that the

postconviction court did not abuse its discretion by denying Kinney's request for postconviction relief on the ground that he waived his claim of ineffective assistance of counsel by not raising it in his direct appeal. *See Russell,* 562 N.W.2d at 673–74 (holding that the defendant's ineffective assistance of counsel claim was precluded where the defendant failed to raise it on direct appeal). Since this ground alone supports the postconviction court's denial of Kinney's requested relief, we need not consider the other grounds found by the postconviction court to support its decision. *See Robinson,* 567 N.W.2d at 494.

Affirmed.

PAGE, Justice (concurring).

I concur in the result. I write separately to add that Kinney's claim of ineffective assistance of counsel fails even if he is not barred from raising the claim on a petition for postconviction relief. To establish a claim of ineffective assistance of counsel, a criminal defendant must demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness and (2) a reasonable probability that the outcome would have been different but for counsel's errors. *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Ture,* 632 N.W.2d 621, 632 (Minn.2001). In light of the evidence presented at trial, Kinney cannot establish that his testimony would have produced a different result.