Moises Vidal ROBLEDO–KINNEY, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A07–2244.

Supreme Court of Minnesota.

June 26, 2008.

Moises Vidal Robledo-Kinney, appellant pro se.

Lori Swanson, Atty. General, Susan Gaertner, Ramsey County Atty., Mark Nathan Lystig, Asst. Ramsey County Atty., St. Paul, for Respondents.

## OPINION

ANDERSON, PAUL H., Justice.

In 1999, a Ramsey County jury found Moises Vidal Robledo–Kinney guilty of first-degree murder, in violation of Minn. Stat. § 609.185 (2006); second-degree murder, in violation of Minn.Stat. § 609.19, subd. 1(1) (2006); second-degree unintentional murder, in violation of Minn.Stat. § 609.19, subd. 2(1) (2006); and kidnapping, in violation of Minn.Stat. § 609.25, subds. 1(3), 2(2) (2006). The Ramsey County District Court convicted Kinney of first degree murder and sentenced him to life imprisonment. We affirmed his conviction on direct appeal. Kinney subsequently petitioned for postconviction relief, which the postconviction court denied. We affirmed. Kinney filed two additional postconviction petitions, which were both denied by the postconviction court. In 2007, Kinney filed the current postconviction petition. The postconviction court in this matter denied relief, concluding that Kinney waived his claims by not arguing them on direct appeal. Kinney now appeals to our court.

The facts relevant to this appeal are as follows.[1] On January 30, 1998, petitioner Moises Vidal Robledo–Kinney and Joshua Christenson were involved in a fight while attending a birthday party at a home in Saint Paul. During the fight, Kinney and some other party goers wrapped masking tape around Christenson's head—covering his eyes, nose, and mouth. Christenson was then beaten by several people and taken into the basement of the house. While in the basement, Kinney sodomized Christenson with a mop handle. Christenson was then carried out to his car where he was stabbed by Kinney and another man. The car was later moved and abandoned nearby, where it was discovered the next day with Christenson's dead body in the back seat.

In May 1998, Kinney was arrested for Christenson's murder and soon thereafter attempted to negotiate a plea with the State. On June 1, a plea agreement was reached, but it was contingent on Kinney not having stabbed or sexually assaulted Christenson. Later on the same day, Kinney informed his attorney that he had both sexually assaulted and stabbed Christenson. Kinney's attorney did not inform the State what Kinney had told him. Kinney then gave a statement to the police indicating that he had sexually assaulted and stabbed Christenson. Based on Kinney's

---

1. A more detailed statement of the facts of the events surrounding the January 30, 1998, incident can be found in our opinions on Kinney's direct appeal and his first petition for postconviction relief. *See State v. Robledo–Kinney,* 615 N.W.2d 25 (Minn.2000); *Robledo–Kinney v. State,* 637 N.W.2d 581 (Minn. 2002).

statement, the State withdrew its plea agreement offer.

In July 1998, Kinney was indicted for first-degree murder, in violation of Minn. Stat. § 609.185 (2006); second-degree murder, in violation of Minn.Stat. § 609.19, subd. 1(1) (2006); second-degree unintentional murder, in violation of Minn. Stat. § 609.19, subd. 2(1) (2006); and kidnapping, in violation of Minn.Stat. § 609.25, subds. 1(3), 2(2) (2006). Following the indictment, Kinney moved the district court to specifically enforce the plea agreement, claiming detrimental reliance. The court denied the motion, concluding that a mutual mistake by both the State and Kinney's attorney had occurred at the time of the plea agreement negotiations regarding the extent of Kinney's involvement in Christenson's death. The court also stated: "At best, the information obtained during the interview may be used to impeach [Kinney] should he testify at trial inconsistently with his June 1, 1998, statement. [Kinney] does not have the right to offer perjured testimony. Thus, there is no detriment in him being prohibited from doing so." Kinney filed an appeal for discretionary review of the order. The court of appeals affirmed the district court.

The district court revisited the June 1 statement during jury selection when Kinney attempted to get the State to enter into a stipulation informing the jury that Kinney had given the police a statement, but that the contents of the statement were inadmissible. During this discussion, the court clarified what it had meant at the plea agreement hearing. The court stated that it was inappropriate to use Kinney's statement to the police in any fashion— referencing laws indicating that the statement should be treated as if it does not exist at all. But the court stated that if the defense sought to use the statement at trial, this use would essentially be a waiver and the substance of the statement would be admissible.

At trial, Kinney's defense theory was that although he participated in the beating of Christenson, he was not involved in the acts that caused Christenson's death. Kinney did not testify on his own behalf. When waiving his right to testify, Kinney stated on the record that it was his understanding that if he took the stand, his June 1, 1998, statement to the police could be admitted into evidence. The jury found him guilty of one count of first-degree murder, two counts of second-degree murder, and one count of kidnapping. Minn. Stat. §§ 609.185; 609.19, subds. 1(1), 2(1); 609.25, subd. 1(3); 609.05 (2006). The district court convicted him of first-degree murder and sentenced him to life in prison without the possibility of release.

On direct appeal, Kinney argued, among other things,[2] that he was denied the right to testify in his own defense because of the district court's comments that his June 1, 1998, statement to the police could be used to impeach him if he testified at trial. *Robledo–Kinney*, 615 N.W.2d at 29. In our opinion affirming Kinney's conviction, we recognized that statements made in connection with an offer to plead guilty are

---

**2.** Kinney filed a pro se brief raising four additional claims: 1) he is entitled to specific enforcement of the plea agreement because he detrimentally relied on that agreement when he gave his statement to police on June 1, 1998; 2) his grand jury indictment and his trial were tainted by the State's improper use of his June 1 statement; 3) the district court erred when it denied his request for an instruction on a lesser, but not included, offense; and 4) the prosecutor deprived him of a fair trial by committing misconduct during closing argument. *Robledo–Kinney*, 615 N.W.2d at 32–33. We concluded that these claims lacked merit. *Id.*

not admissible for any purpose. *Id.* at 30 (citing Minn. R. Evid. 401). But we stated that at the plea agreement hearing, the district court simply indicated what it *"might do* if in fact Kinney took the stand and testified inconsistent[ly] with his June 1, 1998, statement." *Id.* at 30. Thus, we concluded that the court "did not make a final determination as to how, or even if, Kinney's statement could be used at trial." *Id.* at 31. We also concluded that Kinney should have understood that the statement could not be used for impeachment or any other purpose unless Kinney himself sought to use it to mislead the jury. *Id.* at 31. We based this conclusion on the district court's subsequent discussion during jury selection indicating that the statement should be treated as if it does not exist at all. Accordingly, we affirmed Kinney's conviction, concluding that the court did not prevent Kinney from testifying at trial. *Id.* at 32.

In 2001, Kinney filed his first petition for postconviction relief, asserting that his trial counsel was ineffective because his attorney gave Kinney incorrect advice about the consequences of testifying. More particularly, Kinney argued that he waived his right to testify at trial because his attorney told him that if he testified, his June 1, 1998, statement to police would be admissible. The postconviction court denied relief, concluding that the issue was waived because Kinney did not raise it on direct appeal. The court further concluded that on direct appeal, we already rejected Kinney's argument that he was denied his right to testify at trial because he thought his statement to the police could be used for impeachment purposes. Final-

ly, the postconviction court concluded that Kinney failed to show that his trial counsel's actions fell below an objective standard of reasonableness or that but for trial counsel's errors, the trial outcome would have been different.

Kinney appealed the postconviction court's denial of relief. We concluded that the legal and factual basis for the ineffective assistance of trial counsel claim was known at the time of direct appeal, and that no additional fact-finding was necessary to evaluate the claim. *Robledo–Kinney v. State,* 637 N.W.2d 581, 585–86 (Minn.2002). Accordingly, we affirmed the postconviction court's denial of relief on the ground that Kinney waived his ineffective assistance of trial counsel claim when he failed to raise it on direct appeal. *Id.* at 587.

In 2003, Kinney filed a second petition for postconviction relief, which the postconviction court also denied. In 2004, Kinney filed a third postconviction petition identical to his second petition. The postconviction court again denied relief.[3] In 2007, Kinney filed the current petition for postconviction relief claiming ineffective assistance of trial and appellate counsel. The postconviction court summarily denied relief, concluding that Kinney had waived both ineffective assistance of counsel claims. Kinney appeals, arguing that he should not be barred from bringing his claims.

 When reviewing a postconviction court's denial of relief, we have "an obligation to extend a broad review of both questions of law and fact." *Butala v.*

---

**3.** In his second and third postconviction petitions, Kinney argued the following: 1) the district court erred when it denied Kinney's request for a diminished capacity defense; 2) Kinney received ineffective assistance of trial counsel; and 3) the district court erred

"when it sentenced petitioner in reasonable presence of 'judicial bias' by means of incomplete sentencing and in lieu of apparent coercion between the state's prosecution and said tribunal to obtain it's [sic] conviction."

*State,* 664 N.W.2d 333, 338 (Minn.2003) (internal quotation omitted). On review, we examine issues of law de novo and issues of fact for sufficiency of the evidence. *Leake v. State,* 737 N.W.2d 531, 535 (Minn.2007). "Postconviction courts are required to hold an evidentiary hearing and make findings of fact and conclusions of law '[u]nless the petition and the files and records of the proceedings conclusively show that the petitioner is entitled to no relief.'" *Id.* (quoting Minn.Stat. § 590.04, subd. 1 (2006)). "An evidentiary hearing is unnecessary if the petitioner fails to allege facts that are sufficient to entitle him or her to the relief requested." *Id.* The allegations must be "more than argumentative assertions without factual support." *Id.* (internal quotations omitted).

■■ Further, when a "direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). But we will consider a claim otherwise barred by *Knaffla* if either 1) "the claim's novelty was so great that its legal basis was not reasonably available when direct appeal was taken," or 2) "fairness so requires [review] and * * * the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal." *Leake,* 737 N.W.2d at 535 (internal quotations omitted).

■■ Kinney claims that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on direct appeal. Kinney filed multiple postconviction petitions before fil-

ing the current petition. Because Kinney previously petitioned for postconviction relief, we conclude that he already had ample opportunity to raise his ineffective assistance of appellate counsel claim. Moreover, as stated above, in the first postconviction proceeding we concluded that Kinney either knew or should have known about his ineffective assistance of trial counsel claim on direct appeal. Because Kinney should have known about his ineffective assistance of trial counsel claim at the time of his direct appeal, he also should have known about his ineffective assistance of appellate counsel claim when he filed his first postconviction petition. This is so because his ineffective assistance of appellate counsel claim is based on his ineffective assistance of trial counsel claim.[4] Kinney offers no explanation for why he did not raise his ineffective assistance of appellate counsel claim in his first postconviction petition or in his second and third petitions. We therefore conclude that because Kinney failed to raise his ineffective assistance of appellate counsel in his first postconviction petition, the claim is barred by *Knaffla.*

Finally we note that one of the grounds for Kinney's ineffective assistance of trial counsel claim is his assertion that he did not testify at his trial because trial counsel erroneously advised him that if he did testify, his June 1, 1998, statement to police could be admitted to impeach him. Based on the record, it appears that Kinney may have misunderstood the consequences of testifying at trial; but we addressed this issue on direct appeal. *See Robledo–Kinney,* 615 N.W.2d at 30. Further, even if Kinney's counsel was ineffec-

---

**4.** Additionally, in *Sutherlin v. State,* we stated that when a party's ineffective assistance of trial counsel claim is deemed waived, that party then claiming that appellate counsel was ineffective for not raising the trial coun-

sel claim "is in effect simply recharacterizing an issue that he should have raised on direct appeal," and should therefore be barred from bringing the claim. 574 N.W.2d 428, 435 (Minn.1998).

tive for his advice regarding the consequences of Kinney testifying, we conclude that the trial outcome would not have been different but for that error. First, the overall evidence against Kinney was strong, including testimony from several eyewitnesses who were sequestered during trial. Second, Kinney made the following statement to the court during trial: "I'm not going to lie. I haven't lied to the police and I still won't." This statement appears to be confirmation that Kinney was truthful when he gave the police his statement and that he would continue to tell the truth, which implies that if asked, he would describe his participation in the incident consistently with his statement to police. Thus, even if Kinney had testified, he would only have confirmed what the State witnesses testified to and what he told police during plea negotiations.

Affirmed.

MAGNUSON, C. J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.