*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0978**

State of Minnesota,
Respondent,

vs.

Justin Michael Fenney,
Appellant.

**Filed April 27, 2015
Affirmed
Larkin, Judge**

Ramsey County District Court
File No. 62-CR-12-8669

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and

Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of first-degree criminal sexual conduct, arguing that the evidence is insufficient to sustain his conviction and that he is entitled to a new trial based on a witness's posttrial recantation. We affirm.

**FACTS**

Respondent State of Minnesota charged appellant Justin Michael Fenney with first-degree criminal sexual conduct and third-degree assault against L.H. The complaint alleged that Fenney severely beat L.H. and sodomized her with a toilet-brush handle, causing L.H. to sustain two black eyes, a broken nose, extensive bruising, and a laceration to the area between her rectum and vagina, which required surgical repair. Fenney waived his right to a jury trial on the issue of guilt and the presence of aggravating factors, and the case was tried to the district court. The district court's findings of fact are summarized below.

Fenney and L.H. had been in a tumultuous 11-year relationship and have one child in common. On October 25, 2012, L.H. drank alcohol throughout the day and into the evening and was engaged in a sexual act with another man on her living-room couch when Fenney walked into her apartment around 10:00 p.m. Fenney was furious. L.H. ran into her bedroom, where their nine-year-old daughter was sleeping, and closed the door. As Fenney kicked the bedroom door open, the other man ran from the apartment. Fenney proceeded to beat L.H., repeatedly hitting and kicking her. Although L.H.'s alcohol consumption limited her recall, she remembered the angry look on Fenney's face

as he choked her and her pleas to stop as she lay on the bathroom floor with her nose bleeding profusely into the toilet.  She also remembered being on the floor between the bathroom and living room with her hands behind her back and feeling a pain in her "bottom."  She passed out, and when she woke up, her "bottom" hurt.  She did not know whether or not Fenney had anally penetrated her with an object.

When the police arrived, they found a toilet brush with a bloody handle in the bathroom.  The blood covered five and one-half inches of the handle.  Officers also discovered fecal matter on the bathroom floor just inside the threshold of the door.  A paramedic observed that L.H.'s nose was deformed and that she had a swollen and bloodied face.  She also had blood running down her leg.  L.H. indicated to the paramedic that the back of her groin area hurt.  The paramedic asked L.H. if Fenney had assaulted her with the toilet-brush handle, and L.H. indicated "yes" by nodding.  Later, the Minnesota Bureau of Criminal Apprehension (BCA) conducted DNA testing of the blood on the toilet-brush handle and concluded that DNA from the blood matched L.H.'s DNA.

Paramedics transported L.H. to Regions Hospital, where Dr. Bruce Bennett performed emergency surgery after determining that L.H. had suffered a rectal penetration, which lacerated and perforated her rectal wall.  Due to the location and type of injury, Dr. Bennett believed that L.H. was at high risk for a severe and life-threatening infection.  During surgery, Dr. Bennett discovered a one-inch external injury to the left soft tissue surrounding L.H.'s anus, a four-inch internal tear, and a one-inch internal perforation, which breached the rectal wall.  Dr. Bennett opined that these injuries were

consistent with penetration by a toilet-brush handle and a five and one-half inch insertion. And he noted that anal penetration can cause the anal muscles to release fecal matter.

L.H.'s mother visited her in the hospital. L.H. told her mother that Fenney had "violated" her and caused her injuries. Saint Paul Police Officer Lila Sturgeon interviewed L.H. in the hospital. When Officer Sturgeon asked L.H. if she believed she was sexually assaulted with the toilet brush, L.H. responded: "I know I was, it was the first thing I noticed, my bottom hurt so much."

Saint Paul Police Sergeant Eric Skog interviewed Fenney in the Ramsey County jail. During the interview, Sergeant Skog told Fenney that he was charged with criminal sexual conduct. Sergeant Skog told Fenney that L.H. had injuries to her "private areas" and asked how those injuries could have happened. Sergeant Skog did not mention L.H.'s anal injury or make any reference to L.H.'s buttocks or anus. Fenney denied raping L.H. and said that he did not do anything to her "bottom."

The district court rejected Fenney's theory that L.H.'s rectal injury occurred unintentionally, concluding that there was "no credible evidence that [L.H.] was injured as a result of an accidental fall or accidental anal penetration." The district court found Fenney guilty as charged. The district court also found that the state proved three aggravating factors. The district court sentenced Fenney to serve 270 months in prison for the first-degree criminal-sexual-conduct offense, an upward-durational departure based on L.H.'s particular vulnerability and the particularly cruel manner in which Fenney committed the offense.

After sentencing, L.H. provided a statement to the police that differed from her trial testimony. At trial, L.H. testified that she felt pain in her rectum and that the pain occurred simultaneously with a kick when she was "part way in the living room [and] part way in the bathroom" and her "hands were behind [her] back." But she claimed that she did not know whether Fenney had penetrated her anally. In her post-sentencing statement, L.H. stated that Fenney threw her against the bathroom wall just before she felt pain shoot up her back. L.H. said:

> I don't know if he picked me up and threw me, or if he just really flung me with such force, but my feet left the ground. I remember my feet left the ground. Hit the wall. I was pretty much—I was clinched to the thing trying to hold myself up. But when I hit, that's when I hit felt something shot up my back.

L.H. stated that next, Fenney kicked her in the stomach and the face, and she passed out. In sum, L.H. recanted the portion of her trial testimony that suggested Fenney intentionally penetrated her anus. She did not recant her testimony that Fenney beat her.

Fenney appealed, and this court stayed the appeal and remanded for postconviction proceedings. Fenney filed a petition for postconviction relief, requesting a new trial based on L.H.'s recantation. The postconviction court held an evidentiary hearing. At the hearing, L.H. asserted her Fifth Amendment right against self-incrimination and refused to testify. Fenney submitted L.H.'s post-sentencing statement to the police in lieu of in-court testimony. The postconviction court denied Fenney's petition for relief on the merits, and this court reinstated his appeal.

## D E C I S I O N

## I.

Fenney argues that his conviction of first-degree criminal sexual conduct must be reversed because the state failed to prove the element of intentional penetration. Fenney was convicted under Minn. Stat. § 609.342, subd. 1(e)(i) (2012), which provides that a person is guilty of first-degree criminal sexual conduct if he "engages in sexual penetration with another person," "causes personal injury to the complainant," and "uses force or coercion to accomplish sexual penetration." Sexual penetration includes "any intrusion however slight into the . . . anal opening[] . . . of the complainant's body by any part of the actor's body or any object used by the actor for this purpose." Minn. Stat. § 609.341, subd. 12(2)(i) (2012). "[C]riminal sexual conduct in the first degree require[es] the general intent to sexually penetrate the victim." *State v. Bookwalter*, 541 N.W.2d 290, 296 (Minn. 1995).

When assessing whether trial evidence was sufficient to sustain a conviction, appellate courts review a conviction following a bench trial in the same manner as a conviction following a jury trial. *Davis v. State*, 595 N.W.2d 520, 525 (Minn. 1999). When reviewing a jury verdict based on direct evidence, an appellate court considers whether the legitimate inferences drawn from the evidence on the record would permit a jury to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). Review is limited to a close analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jury to reach the verdict that it did. *State v. Webb*,

440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

An appellate court applies heightened scrutiny when reviewing a verdict based on circumstantial evidence. *Pratt*, 813 N.W.2d at 874. The circumstances proved must be consistent with guilt and inconsistent with any other rational hypothesis. *Id*. Minnesota courts employ a two-step process when reviewing convictions based on circumstantial evidence. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). First, the reviewing court identifies the circumstances proved. *Id*. In doing so, the court views the evidence in the light most favorable to the verdict. *See Pratt*, 813 N.W.2d at 874 (stating that the supreme court had considered the evidence "in the light most favorable to the verdict" when determining the circumstances proved). The court defers to the fact-finder's acceptance and rejection of proof and to its credibility determinations. *Andersen*, 784 N.W.2d at 329; *see also State v. Hughes*, 749 N.W.2d 307, 312 (Minn. 2008) (stating that juries are "in the best position to weigh the credibility of the evidence and thus determine which witnesses to believe and how much weight to give their testimony").

Next, the reviewing court examines the reasonableness of the inferences that can be drawn from the circumstances proved, including inferences of innocence as well as guilt. *Andersen*, 784 N.W.2d at 329. All of the circumstances proved must be consistent

7

with guilt and inconsistent with any other rational hypothesis negating guilt. *Id*. at 330. The reviewing court does not defer to the fact-finder's choice between rational hypotheses. *Id*. at 329-30. But appellate courts "view the circumstantial evidence as a whole, not as isolated facts." *State v. Hurd*, 819 N.W.2d 591, 599 (Minn. 2012). And the "[s]tate does not have the burden of removing all doubt, but of removing all reasonable doubt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). A rational hypothesis negating guilt must be based on more than mere conjecture or speculation. *Andersen*, 784 N.W.2d at 330.

The circumstantial-evidence standard of review is used "when the state's case is based largely, or entirely, on circumstantial evidence." *State v. Sam*, 859 N.W.2d 825, 831 (Minn. App. 2015). The parties disagree regarding whether the direct- or circumstantial-evidence standard of review should be applied in this case. Fenney argues for application of the heightened circumstantial-evidence standard. We need not resolve the dispute regarding the more appropriate standard of review because the evidence is sufficient under the heightened circumstantial-evidence standard. *See State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013) (declining to resolve a similar dispute regarding the appropriate standard of review, concluding that even under the "more favorable" circumstantial-evidence standard, the evidence was sufficient to sustain the conviction).

The district court's findings establish that the following circumstances were proved. Fenney was angry and severely beat L.H. The police found a toilet brush with five and one-half inches of L.H.'s blood and DNA on the handle at the crime scene. The police also found fecal matter just inside the threshold of the bathroom doorway, where

8

L.H. testified that she was located when she felt pain in her "bottom" during Fenney's assault. Dr. Bennett established that L.H.'s injuries were consistent with penetration by a toilet-brush handle and a five and one-half inch insertion and that anal penetration can cause the anal muscles to release fecal matter. During Fenney's statement to the police, he denied doing anything to L.H.'s "bottom," even though the police had not told him that L.H. sustained a rectal injury. Viewed as a whole, these circumstances support a rational hypothesis that Fenney intentionally penetrated L.H.'s anus with the toilet-brush handle.

Fenney contends that the circumstances are also "consistent with an accidental injury resulting from falling during the physical altercation onto [a] metal toilet paper roll handle that is protruding from the bathroom wall." As support, Fenney asserts that the circumstances proved also include testimony from Dr. Bennett that the injury "could have been caused by a person being pushed or falling laterally with enough force onto a fixed, sharp object," the "absence of any fecal matter on the brush," and "the presence of [the] sharp metal toilet paper roll holder on the wall beside the toilet." Fenney argues that "Dr. Bennett did not testify that the metal toilet paper roll holder could not be the source of the injury," Dr. Bennett "was not shown the exhibits portraying the actual toilet brush found in the bathroom nor asked for his specific opinion whether that item recovered could have caused the injury," and "[L.H.] did not testify that appellant engaged in sexual penetration." But Fenney identifies very little record evidence to support his hypothesis that L.H. sustained her rectal injury accidentally. Although a picture of the crime scene shows a toilet-paper-roll holder protruding from the bathroom wall, Fenney does not

9

argue that there is physical evidence such as blood, fecal matter, or DNA connecting the holder to L.H.'s injury.

Once again, a rational hypothesis negating guilt must be based on more than mere conjecture or speculation. *Andersen*, 784 N.W.2d at 330. And "possibilities of innocence do not require reversal of a jury verdict so long as the evidence taken as a whole makes such theories seem unreasonable." *State v. Taylor*, 650 N.W.2d 190, 206 (Minn. 2002) (quotation omitted). Fenney's hypothesis of innocence seems unreasonable in light of the evidence as a whole. Moreover, it is based on conjecture and speculation. It therefore is not a rational theory that negates Fenney's guilt.

In conclusion, because the district court, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that Fenney intentionally penetrated L.H.'s anus with the toilet-brush handle during the assault, we do not disturb its finding of guilt.

## II.

Fenney argues that he is entitled to a new trial based on "newly-discovered evidence that [L.H.] gave false testimony at trial." Courts "apply a three-prong test known as the *Larrison* test to determine whether a petition for postconviction relief warrants a new trial based on recantation of trial testimony." *State v. Turnage*, 729 N.W.2d 593, 597 (Minn. 2007); *see Larrison v. United States*, 24 F.2d 82, 87-88 (7th Cir. 1928) (setting forth test), *overruled by United States v. Mitrione*, 357 F.3d 712, 718 (7th Cir. 2004) (modifying test). Under that test, a petitioner is entitled to a new trial if

10

> (1) the court is reasonably well-satisfied that the testimony given by a material witness was false; (2) without the testimony, the jury might have reached a different conclusion; and (3) the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Turnage*, 729 N.W.2d at 597 (quotation and alterations omitted). "The first two prongs are compulsory, but the third prong is not required in order to grant a new trial." *Id*. A decision to deny a new trial based on recanted testimony is reviewed for an abuse of discretion. *Williams v. State*, 692 N.W.2d 893, 896 (Minn. 2005).

In this case, the postconviction court assumed that Fenney satisfied the first prong but concluded that he did not satisfy the second. We focus our analysis on the second prong because it is dispositive. *See Turnage*, 729 N.W.2d at 598 (stating that "because our analysis of the second *Larrison* prong is dispositive of this appeal, we do not decide whether the postconviction court abused its discretion under the first *Larrison* prong").

"Under the second *Larrison* prong, the court is to ask whether the petitioner has demonstrated that without the recanting witness's testimony, the jury might have reached a different conclusion." *Id*. (quotation and alteration omitted). Appellate courts "examine whether the jury would not likely have found the defendant guilty [without the testimony] and consider whether the other evidence against the defendant was overwhelming." *Martin v. State*, 825 N.W.2d 734, 743 (Minn. 2013) (quotation omitted). "[T]he second *Larrison* prong does not ask whether the evidence was sufficient to convict the defendant in the absence of the recanted testimony. The question instead is

11

whether the jury might have found the defendant not guilty if the recanting witness had not testified." *Turnage*, 729 N.W.2d at 599.

In this case, the postconviction court reasoned that in finding Fenney guilty of criminal sexual conduct, the district court "did not rely heavily on [L.H.'s] trial testimony to find that [Fenney] committed the sexual assault" and that it "relied instead on the medical testimony, corroborated by the physical evidence, to find that [L.H.] was not injured as a result of an accidental fall or accidental anal penetration." Moreover, the postconviction court noted that the district court heavily weighed Fenney's statement to the police against him, finding that "[t]he fact that Fenney offered the term 'bottom' when denying raping [L.H.] is highly corroborative of the fact that he committed the rectal assault."

Fenney argues that without L.H.'s "false testimony" the district court "would not have had her description of being on the floor with her hands behind her back when she first felt the pain in her bottom," but would instead "have had her description of a bathroom incident wherein she felt the pain in her bottom immediately after she was slammed up against a wall and countertop—actions that are consistent with the defense theory at trial that [L.H.'s] injury was caused by an accident." But the second prong of the *Larrison* test does not assess whether the verdict would have been different if the new statement had been received in evidence instead of the recanted statement.[1] The second

_____

[1] Fenney conflates the newly discovered evidence test under *Rainer v. State*, 566 N.W.2d 692 (Minn. 1997), with the *Larrison* test. Generally, newly discovered evidence is analyzed under the four-part *Rainer* test. *Dukes v. State*, 621 N.W.2d 246, 257 (Minn. 2001). The fourth prong of the *Rainer* test addresses whether the newly discovered

prong asks merely "whether the jury might have found the defendant not guilty if the recanting witness had not testified." *Id.*

Fenney also argues that under the second *Larrison* prong, assessment of the trial evidence should not include L.H.'s out-of-court statements, including the paramedic's testimony that L.H. nodded yes when asked if she had been sexually assaulted, L.H.'s mother's testimony that L.H. said Fenney "violated her," and Officer Sturgeon's testimony that L.H. stated she knew she had been sexually assaulted.[2] But the second prong of the *Larrison* test does not assess whether the verdict might have been different without any of the witness's statements, it asks merely "whether the jury might have found the defendant not guilty if the recanting witness had not testified." *Id.* Because Fenney does not provide legal argument or authority supporting his contention that a recanting witness's out-of-court statements are excluded from consideration under the *Larrison* test, we apply the test as it is repeatedly described in caselaw: "Under the second *Larrison* prong, the court is to ask whether the petitioner has demonstrated that

---

evidence "would probably produce an acquittal or a more favorable result." *Ferguson v. State*, 645 N.W.2d 437, 447 (Minn. 2002). But when newly discovered evidence consists of recanted testimony, the *Larrison* test is used and not the *Rainer* test. *Id.* In fact, the supreme court continues to use the *Larrison* test in cases involving witness recantation and false testimony even though *Larrison* has been overruled. *Ortega v. State*, 856 N.W.2d 98, 103 n.6 (Minn. 2014). And under that test, an "analysis of newly-discovered evidence in cases involving witness recantation should not be an analysis of the impact of the recantation, but should be an analysis of the effect that the absence of the false testimony would have had on the result in the original trial." *Dukes*, 621 N.W.2d at 258. We note that the postconviction court considered whether L.H.'s posttrial statement would have changed the verdict. However, the postconviction court also considered how the absence of L.H.'s testimony would have impacted the verdict, which is the proper analysis under *Larrison*. We focus our review on that aspect of the postconviction court's reasoning.

[2] Fenney does not argue that L.H.'s out-of-court statements were inadmissible.

without the recanting witness's testimony, the jury might have reached a different conclusion." *Id*. at 598 (quotation and alteration omitted).

As to that test, *Ortega v. State* is instructive. 856 N.W.2d 98 (Minn. 2014). In *Ortega*, the supreme court held that a postconviction court did not abuse its discretion by denying a request for a new trial without holding an evidentiary hearing on the underlying witness-recantation claim. *Id*. at 105; *see Ferguson*, 645 N.W.2d at 446 (stating that a petitioner requesting a new trial under the *Larrison* test is "entitled to an evidentiary hearing on a significantly lesser showing than what is required for [an appellate court] to grant him a new trial"). The supreme court reasoned that the second *Larrison* prong was not satisfied because "[r]emoving [the recanting witness's] trial testimony about the fight changes very little about the overall evidence bearing on the fight and manner of [the victim's] death." *Ortega*, 856 N.W.2d at 105. The supreme court noted that "[the recanting witness] never claimed during his trial testimony to have seen Ortega holding a knife or making stabbing motions, . . . there were other witnesses who described the fight and events leading up to the fight, there was physical evidence connecting Ortega to the murder, and the jury heard Ortega's own admissions." *Id*.

The circumstances here are similar to those in *Ortega*. L.H. did not testify that Fenney sodomized her with the toilet-brush handle. But other witnesses testified that L.H. made out-of-court statements indicating that he had done so. Moreover, DNA evidence indicated that L.H.'s blood was on the toilet-brush handle, and medical evidence indicated that L.H.'s injuries and the presence of fecal matter on the floor were consistent with forced penetration with a toilet-brush handle. Lastly, Fenney's reference

14

to L.H.'s "bottom" during his statement to the police was inculpatory because the police had not mentioned L.H.'s rectal injury.

Like the circumstances in *Ortega*, removing L.H.'s trial testimony regarding her rectal injury changes very little about the overall evidence regarding how she sustained the injury. Fenney has not shown that without L.H.'s testimony, the jury might have reached a different conclusion. The postconviction court therefore did not abuse its discretion by concluding that Fenney failed to satisfy the second prong of the *Larrison* test and that he is not entitled to a new trial.

### III.

In his pro se supplemental brief, Fenney argues that his trial counsel was ineffective. Fenney asserts that he and his attorney "immediately had conflicts," there was "poor communication," and his attorney was not "properly prepared for trial." He alleges several trial errors that purportedly stem from the conflict, poor communication, and lack of preparation. This court cannot evaluate Fenney's ineffective-assistance-of-counsel claim because the record does not contain adequate evidence regarding the alleged conflict and communication deficiencies or his attorney's level of trial preparation. Because the record is inadequate to evaluate Fenney's ineffective-assistance-of-counsel claim, we decline to review it. *See State v. Green*, 719 N.W.2d 664, 674 (Minn. 2006) ("Because these [ineffective-assistance-of-counsel] allegations

15

cannot be reviewed on the basis of the trial record, we decline to address them here. They are more properly raised in a petition for postconviction relief.").

**Affirmed.**