### In the Matter of the WELFARE OF B.R.C.

No. A03–663.

Court of Appeals of Minnesota.

March 2, 2004.

John M. Stuart, State Public Defender, Jodie Lee Carlson, Assistant State Public Defender, Minneapolis, for appellant B.R.C.

Mike Hatch, Attorney General, St. Paul; and Lisa N. Borgen, Clay County Attorney, Scott G. Collins, Assistant County Attorney, Moorhead, for respondent State.

Considered and decided by G. BARRY ANDERSON, Presiding Judge, and KLAPHAKE, Judge, and WILLIS, Judge.

## OPINION

KLAPHAKE, Judge.

Following a bench trial, appellant B.R.C. was found guilty of aiding and abetting

first-degree criminal damage to property for vandalizing equipment and other property belonging to a mining operation. *See* Minn.Stat. § 609.595, subd. 1(3) (2002) (damage reducing value of property by more than $500). On appeal, he claims that the evidence was insufficient because it consisted solely of circumstantial evidence and uncorroborated accomplice testimony. Appellant further claims that he was denied effective assistance of counsel when his trial attorney conceded that he was only guilty of shooting at an old pickup truck, which the attorney claimed was worth less than $500.

Because counsel failed to obtain appellant's consent before he conceded appellant's guilt and because we will not assume acquiescence when a juvenile is involved and the record fails to show that counsel's strategy was reasonable, we reverse and remand for a new trial. Given our decision on this issue, we need not address appellant's alternative issue challenging the sufficiency of the evidence.

## FACTS

Over Labor Day weekend 2002, property owned by Aggregate Industries was damaged. The property was located mainly in the "south" gravel pit, which was leased by Aggregate; a "north" gravel pit, which was located about one mile away, was leased by a different company.

According to Aggregate's safety manager, Mark Bluth, fire extinguishers were set off in a portable office, resulting in damage to computers, bullet holes were discovered in the portable generators, windows were shot out of an operations shack, and a bulldozer caterpillar was missing. Bluth followed the bulldozer's tracks into the north pit. The person who had taken the bulldozer had tried to push another piece of machinery and had damaged the bulldozer's air conditioner. Bluth estimated Aggregate's damages as totaling almost $13,000 and submitted an affidavit of loss to that effect.

On cross-examination, Bluth was questioned about a 1967 Ford F–Series pickup truck that had been damaged. Bluth testified that the truck belonged to Aggregate, that it was operable, and that it cost $904.68 to repair the windows on the truck, which had been shot out.

The day before Aggregate discovered the vandalism, a sheriff's deputy had stopped some minors who were in one of the pits looking for an all terrain vehicle (ATV) that they claimed had broken down. Interviews with the minors eventually led deputies to interview J.G.M., who admitted driving the ATV to the north pit with appellant and P.A.B. that weekend, and who claimed that appellant shot the pickup truck. J.G.M. initially denied that any of them went into the south pit or caused any other damage.

Deputies then interviewed appellant, who denied shooting at any windows or other property and who claimed that J.G.M. caused all of the damage. Appellant claimed that he thought P.A.B. might have shot at the pickup truck.

J.G.M. was reinterviewed. Again he claimed that appellant shot the pickup truck. He now claimed, however, that appellant and P.A.B. took the guns and caused all of the damage in the south pit. J.G.M. only admitted to having driven the bulldozer and denied shooting at anything.

The following day, deputies interviewed P.A.B. P.A.B. claimed that he shot the pickup truck, but that J.G.M. drove around on the ATV and caused all of the other damage. P.A.B. claimed that he did not see appellant shoot any property.

J.G.M. pleaded guilty to first-degree criminal damage to property and was subpoenaed to testify at appellant's and

P.A.B.'s joint bench trial. J.G.M., who was driving the ATV, testified that he first stopped by an old blue farm truck and that one of the other two boys shot at the windows. J.G.M. claimed that he "did not know who it was" because he was driving. J.G.M. then claimed that he then dropped the other two boys off in the south pit, while he rode around on the ATV. He admitted that he drove the bulldozer, but denied shooting at anything. He claimed that P.A.B. and appellant kept their rifles with them. He further claimed that he heard shots, but that he did not see the other two boys shoot at anything.

P.A.B. testified at trial, but appellant did not. P.A.B. claimed that he shot the window out of the blue truck; when asked if appellant shot at the truck, P.A.B. responded "Not that I seen, no." P.A.B. further claimed that J.G.M. left him and appellant alone for a while, and drove off on the ATV with appellant's rifle. P.A.B. claimed that he heard shots, but that he did not see J.G.M. shoot anything. P.A.B. denied that he shot at any of the property.

At the end of the state's case, appellant's attorney moved for acquittal on the ground that the only evidence presented by the state regarding appellant's involvement

is that he shot at the '67 pickup truck, and the value of that ... did not exceed $500.00 by any stretch of the imagination, but we would request a lesser included offense of criminal damage to property in the—well, the gross misdemeanor level or the misdemeanor level and ask the Court to find [appellant] guilty of that.

Appellant's attorney further stated:

[Appellant] did admit to his involvement in an attempt to plead guilty to crim[inal] damage to property at an earlier hearing, [which was later withdrawn,] and I believe that is what he is guilty of. The only issue was that we

didn't believe he was necessarily responsible or should be held responsible as an accomplice to first degree because of his level of involvement, and because the amount of restitution was so great[.]

The district court found appellant guilty of aiding and abetting first-degree criminal damage to property. In particular, the court found:

That the statements provided by each of the juveniles during the investigation by the Clay County Sheriff's Department implicated some involvement by each of the juveniles in the acts of vandalism, although each tries to blame another for the bulk of the damage. The reality is that all three juveniles were in the gravel pit area for 5 to 6 hours. The rifles brought to the gravel pit by the minor child and P.A.B. were responsible for much of the damage. Logic suggests that the only reasonable inference is that all three juveniles were involved in the vandalism.

The district court found appellant guilty of aiding and abetting first-degree criminal damage to property. He was adjudicated delinquent, placed on supervised probation, and ordered to complete a 21–day Wilderness Endeavors Program. The court also ordered him to pay joint and several restitution of over $13,000.

## ISSUE

■ Was appellant denied effective assistance of counsel when his attorney conceded his guilt in shooting at the pickup truck?

## ANALYSIS

■ Appellant argues that his attorney was ineffective when he conceded appellant's guilt to a lesser crime of third-degree criminal damage to property, a misdemeanor. Minn.Stat. § 609.595, subd. 2

(2002). At trial, appellant's attorney argued that the evidence only supported finding appellant guilty of damaging the truck, which the attorney claimed was worth less than $500.

In order to show ineffective assistance of counsel, a defendant must affirmatively show that his counsel's representation " 'fell below an objective standard of reasonableness' " and that, " 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)). While a defendant must generally prove prejudice to show ineffective assistance, prejudice will be presumed in certain cases. *Dukes v. State*, 621 N.W.2d 246, 254 (Minn. 2001).

In particular, where counsel admits or concedes a defendant's guilt without the defendant's consent, counsel's performance is considered deficient and prejudice is presumed. *State v. Wiplinger*, 343 N.W.2d 858, 861 (Minn.1984). Absent consent, a defendant is entitled to a new trial unless the record shows that he acquiesced to the concession. *Dukes*, 621 N.W.2d at 254. Acquiescence may be shown when a defense attorney uses the strategy of conceding guilt throughout trial and the defendant fails to object. *State v. Provost*, 490 N.W.2d 93, 97 (Minn.1992). Acquiescence may also be implied when the concession of guilt is an "understandable" strategy, the defendant was present at the time the concession was made, and the defendant admits he understood the implications of the concession but did not object. *State v. Jorgensen*, 660 N.W.2d 127, 133 (Minn.2003).

Here, the record fails to show that appellant consented or otherwise acquiesced to his attorney's strategy. Indeed, the concession of guilt was inconsistent with appellant's prior statement to police and with the statements of his accomplices. Moreover, counsel's references to appellant's prior admissions in his withdrawn guilty plea were error, because evidence regarding a withdrawn guilty plea may not be admitted in a criminal trial. Minn. R. Evid. 410.

Appellant's attorney apparently made the concession in an attempt to convince the court to find appellant guilty of a misdemeanor and avoid a felony conviction. While it may be a reasonable trial strategy to concede an adult defendant's guilt to a lesser-included offense in the hope of persuading the fact finder to acquit him or her of the greater charge, juvenile dispositions are not necessarily tied to a misdemeanor/felony distinction. Thus, the strategy of appellant's attorney was not reasonable in this juvenile proceeding.

Appellant's attorney also assumed that if appellant were found guilty of misdemeanor criminal damage to property, he could not be held accountable for the entire amount of restitution. This assumption was incorrect. The level of an offense has little bearing on the amount of restitution a court may impose. *See State v. Terpstra*, 546 N.W.2d 280, 283 (Minn.1996) (holding that court may order restitution for total amount of loss in excess of monetary parameters of offense).

Finally, we question whether a juvenile defendant should be held to the same standard as an adult in this instance. A decision to make a concession of guilt as a trial strategy is, like a guilty plea, a decision that may be made only by a defendant and only with the defendant's consent. *See State v. Pilcher*, 472 N.W.2d 327, 337 (Minn.1991). While the formalities attendant to a guilty plea may not be

necessary, fairness requires that a defendant's consent to a concession of guilt be given voluntarily, knowingly, and only after full appraisal of the consequences. Given a juvenile's lack of maturity, we believe that a juvenile defendant's consent should be express and placed on the record before a concession of guilt can be made.

## DECISION

Appellant received ineffective assistance of counsel when his trial attorney conceded appellant's guilt without appellant's consent on the record. We therefore reverse and remand for a new trial.

**Reversed and remanded.**