*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0812**

Seth Clayton Francis Crawford, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed February 6, 2017
Affirmed
Connolly, Judge**

Stearns County District Court
File No. 73-CR-13-9939

Craig E. Cascarano, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**UNPUBLISHED OPINION**

**CONNOLLY**, Judge

Appellant argues that the postconviction court erred in denying his request to vacate his guilty plea based upon ineffective assistance of counsel. Because appellant fails to demonstrate that, but for the unprofessional errors of his counsel, he would have proceeded to trial instead of pleading guilty, we affirm.

**FACTS**

On November 12, 2013, appellant Seth Clayton Francis Crawford, while intoxicated, approached two individuals in a parking lot outside of a store and took their shopping bags while brandishing a knife and telling them to "shut up" or he would use the knife. Appellant was arrested in the parking lot where the robbery was committed, and the next day he was charged with two counts of first-degree aggravated robbery. Shortly thereafter an attorney was retained as counsel for appellant.[1] On February 13, 2014, appellant entered a *Norgaard* plea of guilty to both counts of first-degree aggravated robbery. The signed plea petition read:

> I have been told by my attorney and understand: That my attorney discussed this case with one of the prosecuting attorneys and that my attorney and the prosecuting attorney agreed that if I entered a plea of guilty, the prosecutor will do the following: Plead guilty to Count I and Count II. Cap of 58 months to run concurrent on all counts. Defendant is allowed to argue for a departure at [s]entencing.

---

[1] Appellant has now retained different counsel.

At the guilty plea hearing, appellant agreed that he had enough time to talk to his attorney about the case, had been fully advised of the facts in the matter, and that his interests had been represented fully.

At the sentencing hearing appellant's counsel argued for a dispositional departure, asking the district court to allow his client to enter into treatment in lieu of an executed prison sentence. The court sentenced appellant to 58 months in prison.

Appellant filed a petition for postconviction relief requesting the court vacate and set aside the judgment and sentence in this matter allowing him to withdraw his guilty plea as a result of ineffective assistance of counsel. At an evidentiary hearing appellant, his mother, and trial counsel testified. Trial counsel testified that he met with appellant in-person for approximately one hour at the jail where appellant was being held; he took steps to ensure appellant could contact him via phone on a weekly basis; he met with appellant prior to every hearing and after most; and he told appellant that if he went to trial he faced consecutive sentences of 58 and 68 months for a total of up to 126 months. The postconviction court "[found] [that] testimony credible." The postconviction court also found that appellant's testimony was not credible. Appellant claimed that he would not have accepted the plea agreement if he had known the court would commit him to prison; he suggested that trial counsel told him the district court would grant him probation, but also acknowledged that he knew there was a possibility the court would sentence him to 58 months in prison.

The postconviction court concluded that appellant failed to demonstrate that, but for his attorney's errors, he would have proceeded to trial instead of pleading guilty.

**D E C I S I O N**

Because claims of ineffective assistance of counsel involve mixed questions of law and fact, our review of decisions by the postconviction court is de novo. *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013). However, de novo review of ineffective-assistance-of-counsel claims does not extend to findings of fact made by the postconviction court but only to its legal conclusions. *State v. Nicks*, 831 N.W.2d 493, 503-04 (Minn. 2013). "[A] court's factual findings will not be disturbed unless they are clearly erroneous." *Id.* at 503. Because "the postconviction court is in a unique position to assess witness credibility," we "give the postconviction court considerable deference." *Opsahl v. State*, 710 N.W.2d 776, 782 (Minn. 2006).

Appellant argues that the postconviction court erred in denying his petition for postconviction relief based upon ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed using "the two-prong test articulated in *Strickland v. Washington*." *Fields v. State*, 733 N.W.2d 465, 468 (Minn. 2007) (citing *Strickland v. Washington*, 104 S. Ct. 2052, 2064, 466 U.S. 668, 687 (1984)). First, an appellant must show that "counsel's representation fell below an objective standard of reasonableness." *Fields*, 733 N.W.2d at 468. Second, an appellant must show that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* An appellate court "need not address both the performance and prejudice prongs if one is determinative." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

An attorney provides reasonable assistance when he exercises the customary skills and diligence that a reasonably competent attorney would exercise under the

4

circumstances. *Dukes v. State*, 621 N.W.2d 246, 252 (Minn. 2001). An attorney's performance is presumed to be reasonable. *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014). Additionally, when a petitioner makes an ineffective-assistance-of-counsel claim following a guilty plea, he must demonstrate that, but for the ineffective representation, he would not have entered the plea. *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994).

The postconviction court concluded that

> [Appellant] . . . failed to demonstrate by a preponderance of the evidence that, but for defense counsel's errors, he would have proceeded to trial instead of pleading guilty. To support his assertion that [trial counsel] provided ineffective assistance of counsel, [appellant] argues that [trial counsel] (1) failed to properly investigate the case, (2) failed to adequately communicate with him prior to his plea of guilty, (3) did not have sufficient information from him to understand the plea would have to be [a *Norgaard* plea], (4) misinformed him regarding the applicable Minnesota Sentencing Guidelines . . . sentence in this matter[,] (5) promised him a probationary sentence, [and (6)] failed to adequately support a durational departure request.

The postconviction court first analyzed appellant's claims that he was promised a probationary sentence. It concluded that, if trial counsel guaranteed a probationary sentence, then there would have been a reasonable probability that appellant would not have pleaded guilty without that guarantee. *See State v. Trott*, 338 N.W.2d 248 (Minn. 1983) ("If the former counsel made an unqualified promise of probation, then defendant should be permitted to withdraw his plea on the ground that the promise is unfulfilled."). But the court found that appellant's attorney, who testified that he would argue for a probationary sentence but could not guarantee anything, was credible and appellant and his mother, who testified that his attorney had promised that appellant would get eight months

to a year in prison and then be released "into treatment," were not credible. Appellant argues that the postconviction court's credibility determination was clearly erroneous. We disagree.

Several facts in the record support the postconviction court's finding that appellant was not guaranteed a probationary sentence. The plea agreement states: "Plead guilty to Count I and Count II. Cap of 58 months to run concurrent on all counts. *Defendant is allowed to argue for a departure at [s]entencing*." (Emphasis added.) At the plea hearing, the following testimony regarding the plea agreement was made:

> Q. I'm showing you a document. It's entitled Petition to Enter Plea of Guilty in a Felony . . . Case. Do you recognize it?
> A. Yes.
> Q. Is that your signature on the bottom of page four?
> A. Yes, sir.
> Q. And by signing this you're indicating to the Court that you understand both the content and the meaning of the document?
> A. Yes, Sir.
> Q. Did we go through it line-by-line?
> A. Yup.

At the postconviction proceeding, appellant was asked:

> Q. What did [trial counsel] tell you on January 9th [, prior to the plea hearing,] was the plea agreement?
> A. A cap of 58 and then he said get – we'll get a downward departure, do eight months [at] county and get into treatment.
> Q. What did you think cap of 58 meant?
> A. Meant that they couldn't charge me over 58 months.
> . . . .
> Q. Couldn't send you to prison for more than 58 months; is that correct?
> A. Yeah.
> Q. You understood what a cap was; is that right?
> A. Yeah.

6

Q. So you understood in talking to [trial counsel] on the 9th that you could be sent to prison for up to 58 months?
A. Yeah.

Later appellant was questioned about the affidavit he submitted in support for his postconviction motion.

Q. [T]his is the Affidavit . . . and I'd ask you to read Paragraph Number 8.
A. He told me, take the plea negotiation of 58 months. If I did not I would get sentenced to 12 years in prison but indicated that he believed I would get probation or at the worst a 36-month exceeded (sic) sentence if I plead guilty.
Q. So–and this is the Affidavit, again, that you filled out. So in your Affidavit you seem to acknowledge that he told you that 36 months in prison was a possibility; is that what the Affidavit says?
A. Yeah.
Q. So he did in fact talk to you about prison being a possibility and never did promise you outright that you will get probation; isn't that true?
A. No. I say no.

This testimony is inconsistent and contradictory. Appellant admitted he was aware that the most he could get is 58 months in prison and admitted, to the postconviction court, that his attorney told him that 36 months in prison was a possibility, but then he contended that he was promised outright that he would get probation after serving eight months in prison. Additionally, appellant responded "absolutely not" when asked whether he would have taken the 58-month deal if he had known the judge would send him to prison instead of treatment. It is clear that appellant knew he could be sent to prison and that makes his testimony that he would not have accepted the plea deal unreliable. Given the inconsistency in appellant's own testimony, it is reasonable for the postconviction court to credit his attorney's testimony over that of appellant and his mother.

7

With respect to the remaining allegations of deficient performance by trial counsel, the postconviction court concluded that appellant could not produce any evidence that would have had an actual effect on the outcome of the proceeding. Appellant made no argument regarding how additional communication with his attorney would have changed his decision to plead guilty. At the plea hearing, he stated that he had been permitted ample time to consult with counsel and was satisfied with that communication. At the postconviction hearing he did not argue that the *Norgaard* plea was entered into involuntarily or lacked an appropriate factual basis, nor does he make that argument on appeal. The postconviction court also determined that it was not reasonably probable that appellant would have rejected the plea offer if his attorney had told him that the guidelines called for 106 months instead of 126 months.

Appellant also argues that this court should reverse the postconviction court's finding that his attorney was credible because (1) counsel did not understand the difference between durational and dispositional departures and (2) because he told appellant that he could be sentenced to 126 months in prison instead of the 106-month maximum prison sentence he would have received had he lost at trial and been sentenced consecutively. Appellant argues that an attorney who imparts incorrect information about the workings of the sentencing guidelines is untrustworthy and his factual testimony regarding his legal representation of the appellant is not credible. But the postconviction court understood that appellant's attorney had told appellant the wrong sentencing guidelines. However, as the postconviction court found, appellant "did not testify that the 20-month difference would have made a difference in his decision to plead guilty or that it factored into that decision

8

in any way." Even in his appellate brief, appellant does not allege that he would not have entered a guilty plea had he known that he would be potentially subjected to 106 months in prison instead of 126. He argues that, because his attorney did not understand the sentencing guidelines, he received ineffective assistance of counsel. But "we need not address both prongs of the [*Strickland*] test if one is determinative." *State v. Whitson*, 876 N.W.2d 297, 305 (Minn. 2016). Appellant has not argued or presented evidence to support that there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty. Because of this failure to satisfy the second requirement of an ineffective-assistance-of-counsel claim, we affirm.

**Affirmed.**